UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ELIZABETH MAYS and ALESSANDRA MALMQUIST individually and on behalf of others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO: 4:17-cv-48 ) |
| RUBIANO, INC. and SHARON RUBIANO, | ) ) ) ) |
| Defendant. | ) |

## COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Elizabeth Mays ("Mays") and Alessandra Malmquist ("Malmquist") (collectively "Plaintiffs"), on their behalf and on behalf of others similarly situated, brings this action against Rubiano, Inc. d/b/a Danzers ("Danzers") and Sharon Rubiano for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"), and show as follows:

## OVERVIEW

1. Defendant has failed to pay Plaintiffs and those situated to them in accordance with the FLSA. Specifically, Defendant misclassified Plaintiffs as independent contractors, as opposed to employees, at all times in which they worked as Entertainers at Danzers. AS a result, Defendants failed to pay Plaintiffs, and all other members of the proposed class, the minimum wage that they were entitled to under the FLSA. In addition, Defendants required Entertainers to pay a percentage of the tips

they received to Defendants and to employees who do not customarily receive tips in violation of 29 U.S.C. § 203(m). Plaintiffs bring this action pursuant to 29 U.S.C. §216(b).

**PARTIES**

2. Mays is an individual who resides in Wisconsin. She was employed by Danzers within the meaning of the FLSA within the three year period preceding the filing of this complaint. At all times hereinafter mentioned, Mays was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §206. Her written consent is attached as Exhibit A.

3. Malmquist is an individual who resides in Indiana. She was employed by Danzers within the meaning of the FLSA within the three year period preceding the filing of this complaint. At all times hereinafter mentioned, Malmquist was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §206. Her written consent is attached as Exhibit B.

4. Danzers is an Indiana corporation doing business as an adult entertainment club in or around the Lafayette area. Danzers acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs.

5. Upon information and belief, Sharon Rubiano, is an owner of Danzers. She is a U.S. citizen who resides within the geographic environs of the Northern District of Indiana.

6. Each Defendant (collectively "Defendants") is an "employer" within the meaning of 29 U.S.C. § 203(d), (r) and (s).

## JURISDICTION AND VENUE

7. This court properly has jurisdiction under 28 U.S.C. § 1331, because Plaintiffs bring a claim arising under federal law, specifically, the FLSA.

8. Venue is proper in this District because the Defendants may both be found herein, and all of the events giving rise to this claim occurred within this District. Therefore, venue is proper in this court pursuant to 29 U.S.C. §216(b).

## FLSA COVERAGE

9. At all times hereinafter mentioned, Danzers has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

10. At all times hereinafter mentioned, Danzers has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTS

11. Defendants are in the business of providing adult entertainment, food, and alcoholic beverages to customers.

12. To provide such adult entertainment to their customers, Defendants employed Plaintiffs and other employees (collectively "Entertainers") to dance at their business.

13. Entertainers' primary duties include dancing on stage, performing private dances for customers, and spending time with customers in semi-private rooms.

14. Defendants hire new Entertainers with or without previous dancing experience.

15. During the relevant time period, Danzers classified Mays, Malmquist and other Entertainers, as an independent contractor.

16. Plaintiffs did not receive any wages or other compensation from Danzers. Any income Plaintiffs generated was solely through the tips they received from patrons when they performed dances.

17. Plaintiffs were not permitted to work for any escort service while they were employed by Defendants.

18. If Plaintiffs worked three or more shifts at Danzers per week, they were provided with an employee locker and they were not allowed to dance at any other club while still working for Defendants.

19. Danzers set the hours of operation, set the show times during which Entertainers could perform, determined the sequence in which Entertainers, including Plaintiffs, performed on stage, determined the types of costumes that could and could not be worn, and controlled a variety of aspects related to the conduct and appearance of Entertainers, including Plaintiffs, while they worked.

20. Once a shift started, Plaintiffs were required to work a minimum of six (6) hours and could not leave early without permission from Danzers. If Plaintiffs left a shift early without permission, they would be fined or fired by Danzers.

21. Danzers set the minimum tip amount that Plaintiffs were required to collect from patrons for couch dances.

22. Danzers dictated the manner and procedure in which tips were collected from patrons.

23. Danzers required that Entertainers pay a "Jukebox" fee each shift.

24. Defendants required Entertainers to pay a fee or tip-out the disc jockey, bouncer, bartender, waitresses and door guys.

25. Plaintiffs were required to pay Danzers a "house fee" each night they worked.

26. Plaintiffs were required to pay a portion of their tips to Danzers each time they performed "couch dances" or semi-private dances.

27. Managers and other employees of Danzers supervise Entertainers during their shifts and enforce the Defendants' policies, procedures and rules by assessing monetary fines against Entertainers for non-compliance.

28. Defendants refuse to provide Entertainers with receipts for stage fees, house fees, penalties paid, and individual dance fees.

29. Danzers controls all of its own advertising and promotion. Plaintiffs did not have any control over advertising and promotion for Danzers.

30.     Plaintiffs did not make any capital investment in Danzers' facilities, advertising, maintenance, sound system and lights, food, beverage, or other inventory.

31.     Danzers established the hours of operation, and was responsible for hiring, paying, and supervising the staff, including managers, waitresses, bartenders, and bouncers. Plaintiffs were not involved in staffing, nor were they permitted to hire or subcontract other qualified individuals to provide dances to patrons.

32.     At all relevant times, Danzers was exclusively responsible for the maintenance of its facility, inventory, and obtaining all appropriate business insurance and licensing.

33.     Entertainers do not operate their own individual businesses.

**FACTUAL ALLEGATIONS RELATED TO PLAINTIFF, MAYS**

34.     Danzers employed Mays as an Entertainer from on or about January 17, 2017 to February 17, 2017.

35.     On or about February 8, 2017 and February 11, 2017, Mays questioned other dancers as to whether they were being paid as an employee or as independent contractors and discussed with them the differences between the two.

36.     On or about February 17, 2017, Rubiano terminated Mays' employment. Specifically, Rubiano told Mays that she was being discharged because she had researched her name and learned that she had filed other lawsuits regarding wage and hour violations of the FLSA.

37.     Rubiano threatened Mays that she could be hurt if she sued the wrong club.

38. Rubiano contacted several other clubs to inform them not to hire Mays because she had sought or filed suit for wage and hour violations of the FLSA.

### FACTUAL ALLEGATIONS RELATED TO PLAINTIFF, MALMQUIST

39. Danzers employed Malmquist as an Entertainer from on or about July 18, 2016 to February 17, 2017.

40. On or about February 17, 2017, Malmquist was told to report to Rubiano when she arrived at work. Rubiano told Malmquist that there was another girl, Mays, "getting into a legal situation" with the club and that Mays had said that another girl was going to help with her case. Rubiano went on to tell Malmquist that she (Malmquist) was the only girl seen talking to Mays.

41. Rubiano told Malmquist that she got mixed up with the wrong person because Mays sued other clubs.

42. Rubiano told Malmquist that she could be hurt if she sues the wrong club.

43. Rubiano terminated Malmquist's employment because she was associated with Mays.

### COLLECTIVE ACTION FACTUAL ALLEGATIONS

44. Plaintiff are similarly situated to other of Defendants; Entertainers in that the practice and policy of misclassifying Entertainers as independent contractors has affected all current and former Entertainers who worked for Defendants ("Members of the Class").

45. Plaintiffs and the Members of the Class all were subject to Defendants' common business policy of failing to pay wages or any other compensation to Entertainers.

46. Plaintiffs and the Members of the Class all were subject to Defendants' common business policy of retaining a percentage of Entertainer's tips and requiring Entertainers to share an additional percentage of their tips with co-employees who do not customarily receive tips.

47. There are questions of fact and law common to the class, including the following:

   a. Whether Defendants control Entertainers' schedules.

   b. Whether Defendants control what Entertainers wear during their performances;

   c. Whether Defendants control prices for Entertainers' individual dances.

   d. Whether Defendants control how Entertainers perform their dances.

   e. Whether Defendants control which customers Entertainers will dance for and their priority.

   f. Whether Entertainers own and operate their own individual businesses.

   g. Whether Entertainers can realize a profit or loss from their work.

   h. Whether Entertainers have made any capital investments in Defendants or their Club.

   i. Whether Defendants control additional work solicited by customers during Entertainers' shifts.

j. Whether Defendants require Entertainers to remit tips to Defendants.

k. Whether Defendants maintain proper records regarding income derived from tips.

l. Whether Defendants refuse to provide Entertainers with receipts for stage fees, house fees, penalties paid, and individual dance fees.

m. Whether Defendants improperly classify Entertainers as independent contractors.

n. Whether Defendants fail to pay Entertainers a minimum wage.

o. Whether Defendants fail to pay Entertainers overtime wages.

p. Whether Defendants may credit Entertainers' tips to satisfy

q. Defendants' minimum wage obligations.

r. Whether Defendants' charges, fines, and penalties are unlawful deductions from entertainers' tips and/or wages.

s. Whether Defendants are liable to Entertainers for attorney's fees associated with this action.

t. Whether Defendants failure to pay Entertainers minimum wage and overtime is "willful" under the FLSA.

u. Whether Defendants are liable to Entertainers for liquidated damages under 29 U.S.C. 216(b).

48. Defendants failure to pay minimum wage as required by the FLSA results from a policy or practice applicable to Plaintiffs and the Members of the Class. Application of this policy or practice does not depend on the personal circumstances of

the Plaintiffs or those joining this lawsuit. Rather the same policy or practice that resulted in the non-payment of overtime to Plaintiffs applied to all Members of the Class. Accordingly, the class is properly defined as:

**All current and former employees of Defendants who worked as Entertainers.**

49. Defendant knowingly, willfully or with reckless disregard carried out its illegal pattern or practice of failing to pay minimum wage compensation with respect to Plaintiffs and the Members of the Class.

## LEGAL ALLEGATIONS

### COUNT I: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

50. Plaintiffs re-allege and incorporate the preceding paragraphs of this Complaint as fully set forth herein.

51. During the (3) three years preceding this action, or at the commencement of employment (whichever is applicable), Defendants have violated and are violating the provisions of 29 U.S.C. §§ 203 and 206 by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, without compensating these employees for their employment and requiring employees to pay a percentage of their tips to Defendant and other employees who do not customarily receive tips. Defendants have acted willfully in failing to pay Plaintiffs in accordance with the law.

## COUNT II: UNLAWFUL RETALIATION - MAYS

52. Mays re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

53. Defendants violated 29 U.S.C. § 215(a)(3) when they terminated Plaintiff Mays for demanding receipts for stage fees, house fees, penalties paid, and individual dance fees and/or for having exercised her rights under the FLSA by filing a previous claim for wage and hour violations.

## COUNT III: BLACKLISTING - MAYS

54. Mays re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

55. Defendants identified and/or categorized Mays as not eligible for rehire based on her conduct and communicated the information to other employers by virtue of contacting them and otherwise publishing this information with the intent to prevent Mays from maintaining or obtaining employment with them.

56. Defendants actions violated Indiana's Blacklisting Statute, Ind. Code § 22-5-3-1(a) and Ind. Code § 22-5-3-2.

57. As a result of Defendants' actions, Mays has suffered injury.

## COUNT IV: UNLAWFUL RETALIATION - MALMQUIST

58. Malmquist re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

59. Defendants violated 29 U.S.C. § 215(a)(3) when they terminated Malmquist of her association with Mays and their belief that Malmquist was going to

engage in protected activity by assisting and participating in a complaint against Defendants regarding wage and hour violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court find for them and grant them the following relief:

a. An Order pursuant to Section 16(b) and 203(m) of the FLSA finding Danzers liable for unpaid back wages due to Plaintiffs in addition to wages equal to the amount she was required to tip-out to Danzers and other employees, and for liquidated damages equal in amount to the unpaid compensation and tips found due to her;

b. An Order reinstating Plaintiffs to employment with Defendants and/or awarding front pay in lieu thereof;

c. An Order awarding Plaintiffs (and those who have joined in the suit) their lost wages for Defendants;

d. An Order awarding compensatory damages to Plaintiffs for Defendants' violations of Counts II, Count III and Count IV;

e. An Order awarding punitive damages to Plaintiffs for Defendants' violations of Counts II, Count III and Count IV;

f. An Order awarding Plaintiffs (and those who have joined in the suit) the costs of this action;

g. An Order awarding Plaintiffs (and those who have joined in the suit) their attorney's fees;

h. An Order awarding Plaintiffs (and those who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

i. An Order enjoining future violations of the FLSA; and

j. An Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty No. 23551-49
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com
Attorneys for Plaintiffs,
Elizabeth Mays and Alessandra Malmquist

**DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of others similarly situated, by counsel, request a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty No. 23551-49
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000

Facsimile:     (812) 424-1005
Email: ad@bdlegal.com
Attorneys for Plaintiffs,
Elizabeth Mays and Alessandra Malmquist